NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROSA CUZCO,<br><br>                      Plaintiff,<br><br>    v.<br><br>WAL-MART STORES, INC., JOHN DOES 1-10 (said names being fictitious), and XYZ CORPORATIONS 1-10 (said names being fictitious),<br><br>                    Defendants. | Case No. 17-07125 (EP) (CLW)<br><br>**OPINION** |

**PADIN**, District Judge.

This case concerns a slip and fall in New Jersey. Currently pending is Defendant Wal-Mart Stores, Inc.'s ("Walmart") motion for summary judgment pursuant to Fed. R. Civ. P. 56. The Court decides this matter on the papers pursuant to Fed. R. Civ. P. 78 and L.Civ.R.78.1(b). For the reasons stated below, Walmart's motion for summary judgment is DENIED.

**I.    BACKGROUND**

In September 2016, Cuzco visited a Walmart store located in Watchung, New Jersey. D.E. 1-2 "Compl." ¶ 1. As she turned the corner out of an aisle, Cuzco slipped on a puddle of fabric softener, roughly the length of an "end-cap,"[1] and fell. D.E. 47-6 "Witness Statement" at 1.

Surveillance video camera footage captured the events. *See* D.E. 47-6 "Video." The parties do not dispute, and the footage confirms, the following:

---

[1] An end-cap is the short section at the end of an aisle containing featured items. *See* D.E. 48-1 at 30:1-11.

    6:13:26 P.M. – Two Walmart customers, one male (blue shirt) and one female (pink shirt), are standing at an end-cap where fabric softener containers are on display. This particular end-cap is near at least four cash registers, where Walmart employees can be seen assisting customers who were checking out. No other Walmart employees are visible in the footage frame.

    6:13:34 P.M. – The male customer (blue shirt) picks up a fabric softener container from the end-cap and takes a few steps towards an adjacent end-cap.

    6:13:40 P.M. – The male (blue shirt) and female (pink shirt) customers realize that the fabric softener container in the male's hands is leaking onto the floor.

    6:14:00 P.M. – The male customer (blue shirt) walks back to the end-cap containing the other fabric softener containers, places the leaking container back on the shelf, and picks up a replacement.

    6:14:13 P.M. – The male (blue shirt) and female (pink shirt) customers walk away from the area.

    6:15:20 P.M. – Cuzco turns the corner out of an aisle, slips on the spilled fabric softener, and falls.

Cuzco sued Walmart for negligence in New Jersey Superior Court. Compl. at 1. Walmart removed the case to this Court. D.E. 1. With fact discovery now complete, Walmart moves for summary judgment. D.E. 47.

## II.    STANDARD OF REVIEW

A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment. *See id.*

The party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364

F.3d 136, 145-46 (3d Cir. 2004). The moving party must support its motion by citing to specific materials in the record. Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has adequately supported its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted). The nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. The nonmoving party "cannot create an issue of fact merely by [] denying averments [] without producing any support evidence of the denials." *Thimons v. PNC Bank,* NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Where the nonmoving party's "evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50). But "[i]f reasonable minds could differ as to the import of the evidence," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250-51.

In reviewing a motion for summary judgment, the Court "may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marina v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). But if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case[,]" then there is "no genuine issue as to any material fact[,]" and summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 322.

### III. DISCUSSION

This is a negligence case. "The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." *Garcia v. Walmart, Inc.*, 2021 WL 754006, at *3-4 (D.N.J. Feb. 26, 2021) (quoting *Shields v. Ramslee Motors*, 240 N.J. 479, 487 (N.J. 2020)) (internal citation and quotation marks omitted). "Business owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." *Id.* at *4 (quoting *Nisivoccia v. Glass Gardens, Inc.*, 175 N.J. 559, 563 (2003)) (quotation marks omitted). "An injured plaintiff asserting a breach of that duty must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." *Id.* (quoting *Nisivoccia*, 175 N.J. at 563). But where the mode-of-operation doctrine applies, the plaintiff is relieved of her burden of showing that the defendant had actual or constructive notice of the dangerous condition. *See Prioleau v. Ky. Fried Chicken, Inc.*, 223 N.J. 245, 258 (2015) (citation omitted).

### A.   Mode-of-Operation Doctrine

The mode-of-operation doctrine applies when a "dangerous condition is likely to occur as the result of the nature of the [defendant's] business, the property's condition, or a demonstrable pattern of conduct or incidents." *Nisivoccia*, 175 N.J. at 563. Specifically relevant here, when the defendant's business has a "self-service method of operation," the defendant is required to anticipate debris falling on the ground resulting from "the carelessness of either customers or employees." *Id.* at 564. This is due to the increased "risk that a dangerous condition will go undetected and that patrons will be injured." *Prioleau*, 223 N.J. at 262. As a result of the increased risk, there arises an "inference of negligence, shifting the burden of production to the defendant,

who may avoid liability if it shows that it did 'all that a reasonably prudent man would do in the light of the risk of injury [the] operation entailed.'" *Id.* at 263 (quoting *Nisivoccia*, 175 N.J. at 564-65) (citation omitted).

But the mode-of-operation doctrine's application is limited. *See id.* at 254 (citation omitted). There must be a "nexus between [the] self-service components of the defendant's business and a risk of injury in the area where the accident occurred." *Id.* at 262. That nexus depends, not on an individual employee's conduct, but on whether "the [defendant's mode of operation] encourages self-service on the part of the customer, which can reasonably and foreseeably create a risk of harm to the customer." *Id.* (citation omitted). In other words, did the defendant engage in a particular business practice that created an implicit or inherent danger likely to cause injury? *See id.*

The New Jersey Supreme Court has applied the doctrine to injuries occurring when a plaintiff slipped on: (1) a grape near an area of a supermarket that displayed produce in open-top bags, *Nisivoccia*, 175 N.J. at 565; (2) a green bean in a produce aisle with open bins, *Wollerman v. Grand Union Stores, Inc.*, 47 N.J. 426, 428-29 (1966); and (3) a sticky substance in a cafeteria, *Bozza v. Vornado, Inc.*, 42 N.J. 355, 360 (1964). *Teixeira v. Walmart Stores, Inc.*, 2021 WL 4272828, at *7 (Sept. 16, 2021). In these cases, the New Jersey Supreme Court found that "[t]hose areas and objects all 'invite[]' actions by customers, and those actions carry a greater risk of spilling or dropping slippery material than would be present in ordinary business operations." *Id.* (citation omitted).

In contrast, New Jersey courts have not applied the doctrine where a plaintiff slipped on: (1) a grape near an area of a supermarket that displayed produce in pre-packaged sealed containers, *Jeter v. Sam's Club*, 250 N.J. 240, 244-45 (2022); (2) water tracked in from outside of a fast-food

5

restaurant, *Prioleau*, 233 N.J. at 265; and (3) liquid from a refrigerator display near the checkout area where the liquid was sold in a sealed container, *Knight v. Family Dollar Stores, Inc.*, 2022 3905917 , at *20-21 (App. Div. 2022).  In these cases, the New Jersey courts found that there was no evidence showing a "nexus between the dangerous condition and [the] defendant's mode of operation."  *See id.*

This case falls squarely into the latter category of cases where New Jersey courts have found that the mode-of-operation doctrine does not apply.  While it is true that Walmart customers are expected to serve themselves, specifically by selecting sealed containers from the shelves and placing them into their shopping carts, "they are not invited or expected to open the containers or dispense the contents until they get home." *Teixeira*, 2021 WL 4272828, at * 7-8.  Cuzco allegedly slipped on liquid from a leaking fabric softener container.  Nothing about the presence of liquid is a regular or inevitable feature of Walmart's business practice of permitting customers to select the containers themselves.  To properly invoke the mode-of-operation doctrine, Cuzco would need to demonstrate that something about Walmart's mode of operation, *e.g.,* a particular practice, created a particular risk that liquids would leak from the containers and end up on the floor of the store.  She has not.

Instead, Cuzco makes two non-outcome determinative claims.  First, the location of the leaking fabric softener container at an "end-cap" created an increased risk to customers.  In *Betancourt* and *Knight*, the respective plaintiffs slipped and fell on spilled liquid between the cash register and the exit door.  *See Betancourt v. Home Depot U.S.A., Inc.*, 2018 WL 3954854, at *13 (D.N.J. Aug. 16, 2018); *Knight*, 2022 WL 3905917, at *2.  Both courts held that the mode-of-operation doctrine did not apply because spillage near a cash register was insufficient to show that a specific business practice made the dangerous condition foreseeable.  *See Betancourt*, 2018 WL

6

3954854, at *8-11; *see also Knight*, 2022 WL 3905917, at *19-20. Here, the fact that the leaking fabric softener container was located at an "end-cap" points to one business practice: Walmart placed certain items in high-visibility locations to encourage customers to purchase those items. The placement of an item at an "end-cap" is not indicative of an invitation by Walmart for customers to open the seal on a fabric softener container. *See Layden v. Target Corp.*, 768 F. App'x 152, 158 (3d Cir. 2019) (concluding that the plaintiff had not identified any aspect of the item at issue's "characteristics or packaging that *invited* removal so that a substantial risk of injury is inherent in Target's use of them.") (quotation marks and citations omitted) (emphasis in original); *see also Teixeira*, 2021 WL 4272828, at *9 (emphasizing that "cases regularly reject the application of the mode-of-operation rule where it is based on nothing more than a store's placing of merchandise in closed containers on shelves that are accessible to shoppers. Something more, such as a particular risk of spilling as a result of self-service, must be present.")

Second, Cuzco alleges that Walmart's assistant manager was aware that customers sometimes opened sealed fabric softener containers. D.E. 48 at 6. Both in *Jeter* and *Knight*, the courts rejected the argument that the store knew its customers occasionally opened sealed containers while in the store because the store sold the items at issue in "secure packaging that posed no foreseeable risk" that their contents would end up on the floor. *See* 2022 WL 3905917, at *19-20. Here, the fact that Walmart's assistant manager was aware that customers sometimes opened sealed fabric softener containers in the store does not show that it was Walmart's business practice to permit customers to open sealed fabric softener containers while in the store. *See id.* at *20-21 (finding that the assistant manager's statement that "[o]n occasion some customers did spill [] beverages" was insufficient to show a nexus between the dangerous condition and the defendant's mode of operation, because the assistant manager did not "indicate how often he had

7

seen patrons open the beverages at the register, or whether the slip and fall accidents he witnessed 'in the same area' where the plaintiff fell were attributable to the self-serve beverages opened at the counter.").

Precedent and common sense lead the Court to conclude that the mode-of-operation doctrine does not apply here.

**B.     Constructive Notice**

Because Cuzco cannot avail herself of the mode-of-operation doctrine, she must show that Walmart had actual or constructive notice of the spilled fabric softener. *Garcia*, 2021 WL 754006, at *9 (citation omitted). "[A] proprietor is liable for injuries to an invitee if he actually knew of the dangerous condition or if the condition had existed for such a length of time that he should have known of its presence." *Bozza*, 42 N.J. at 359. Cuzco does not claim that Walmart had actual notice of the spill, nor that a Walmart employee caused the spill. Instead, she claims that Walmart had constructive notice of the spill.

A defendant has constructive notice "when the condition existed 'for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent.'" *Troupe v. Burlington Coat Factory Warehouse Corp.*, 443 N.J. Super. 596, 602 (App. Div. 2016) (quoting *Parmenter v. Jarvis Drug Stores, Inc.*, 48 N.J. Super. 507, 510 (App. Div. 1957)). But "[t]he mere existence of an alleged dangerous condition is not constructive notice of it[.]" *Arroyo v. Durling Realty, LLC*, 433 N.J. Super. 238, 243 (App. Div. 2013) (internal citation and quotation marks omitted). And while a business owes a duty of ordinary care to its invitees, it "is not an insurer for the safety of its patrons." *Znoski v. Shop-Rite Supermarkets, Inc.*, 122 N.J. Super. 243, 248 (App. Div. 1973).

Typically, constructive notice is a question of fact for the jury, but it may be appropriate for summary judgment when no reasonable juror could conclude otherwise. *See Melendez v. Target Corp.*, 2022 WL 1617709, at *22 (citation omitted). In most cases, the length of time that the dangerous condition was present is key to determining whether constructive notice existed. *Garcia*, 2021 WL 754006, at *10. But a plaintiff who can point to other factors that should have made the defendant aware of the dangerous condition can also suffice. *See, e.g.*, *Bezglasnaya v. Trump Ent. Resorts, Inc.*, 2013 WL 796308, at *4 (D.N.J. Mar. 4, 2013) (denying summary judgment and concluding that the plaintiff had presented a fact question as to whether the defendant had constructive notice of a dangerous condition when employees were working nearby and a hostess walked by the location where the fall occurred).

There is no bright-line rule as to how much time is sufficient to create an issue as to constructive knowledge. "[C]ourts have often used 45 minutes as a benchmark." *Garcia*, 2021 WL 754006, at *5 (citing *McCracken v. Target Corp.*, 2011 WL 1466075 (D.N.J. Apr. 18, 2011)). But at least one court has found that four minutes is too short to infer constructive notice, *Bowman v. Walmart Stores E., LP*, 2015 WL 568570, at *6 (E.D. Pa. Feb. 10, 2015), while another court has found that four minutes was sufficient "when coupled with the video surveillance of the area and the fact that [an employee] was [lingering] in the area during the existence of the spill." *Romeo v. Harrah's Atl. City Propco, LLC*, 168 F. Supp. 3d 726, 732 (D.N.J. 2016).

In *McCracken*, the court denied the defendant's motion for summary judgment where the plaintiff slipped and fell in an area near the store's checkout lanes and immediately next to the primary entrance of the store only three minutes after the spill allegedly occurred. *See* 2011 WL 1466075, at *3. The court reasoned that a jury could find that the defendant "should have monitored the floor to ensure that it was clear of hazards on a minute-by-minute basis" because

"frequent spills are particularly likely in this area because of the constant traffic, bottlenecking of customers, and the likelihood that customers would stop at the shopping carts and baskets and unload personal items or merchandise into the carriers." *Id.*

Here, a few of the undisputed facts seem to favor finding that Walmart did not have constructive notice. Video camera surveillance footage shows that approximately two minutes before Cuzco slipped and fell, another Walmart customer picked up a fabric softener container from an end-cap nearby, walked a few steps toward another customer at an adjacent end-cap, realized the container was leaking, walked back to the end-cap with the other fabric softener containers, placed the leaking container back on the end-cap, and walked away. Walmart's 56.1 Stmt. at 1-2. Approximately two minutes later, Cuzco unsuspectingly walked toward the area where the liquid had been spilled and slipped and fell. *Id.* at 2. The footage also shows that there were at least four cash registers with Walmart employees near the end-cap where Cuzco fell. *See* Video at 6:13:00-6:15:30. All of the Walmart employees at the nearby cash registers were assisting customers who were checking out. *See id.* No other Walmart employee can be seen in the vicinity of the spill until after Cuzco fell. *See id.*

On the other hand, three relevant facts counsel against finding that Walmart did not have constructive notice as a matter of law. First, Walmart's assistant manager testified that items featured on end-caps are intended to be "eye catching to the customer[,]" D.E. 48-1 at 15:23-16:6. It follows that a jury could reasonably find that if consumers are frequently stopping at these "eye catching" end-caps, then these sections are also likely to have higher consumer traffic. *See McCracken*, 2011 WL 1466075, at *3 (emphasizing that the more traffic, the more a business is on notice that it needs to maintain the area).

Second, Walmart's assistant manager testified that "safety sweeps,"[2] which are typically done every half-hour to an hour, may be done more frequently in sections known to have high traffic, like the food section. D.E. 48-1 at 17:12-24, 21:16-22:14. If a jury were to find that end-cap sections have higher consumer traffic, like the food section, then it would also be reasonable for a jury to find that safety sweeps should be conducted with greater frequency near end-cap sections. *See McCracken*, 2011 WL 1466075, at *3.

Third, the type of item at issue, fabric softener, is prone to spills. Here, like in *Garcia*, it would take only one leaky container to create a slip-and-fall hazard. *See Garcia*, 2021 WL 754006, at *12 (concluding that a jury could find that items in the hair care aisle pose risks that warrant additional checks from employees because they are slippery liquids that are prone to spills). A jury could reasonably find that because fabric softener is a type of item prone to spills that additional safety sweeps in the area were warranted.

Taken together, the Court concludes that the three facts described above contribute to a triable issue. Accordingly, the evidence in the record is sufficient to raise a genuine, material issue of fact as to whether Walmart had constructive notice of the fabric softener spill.

IV.     **CONCLUSION**

For the reasons stated herein, Walmart's motion for summary judgment is DENIED. An appropriate Order accompanies this Opinion.

Dated: September 19, 2022

_____
Hon. Evelyn Padin, U.S.D.J.

---

[2] A "safety sweep" can "entail either an associate[] walking around with a broom just looking to see if there is anything on the ground or it can entail a maintenance associate walking around picking things up off the ground that might have fallen or broken." D.E. 48-1 at 17:25-18:1-6.